## Case No. 10,249.

NICHOLSON v. McGUIRE.

[4 Cranch, C. C. 194.][1]

Circuit Court, District of Columbia. April Term, 1832.

TRUSTS—FAILURE OF TRUSTEE TO INVEST FUNDS—INTEREST—EFFECT OF RECEIPT BY CESTUI QUE TRUST.

1. A trustee who is directed by the deed of trust to sell the property and invest the proceeds in productive funds, and fails to do it, is liable to pay interest.

2. A receipt given by a young man just arrived at full age, for a certain sum, as his share of his father's estate, is not a bar in equity to his de-

[1] [Reported by Hon. William Cranch, Chief Judge.]

manding the interest and dividends upon the fund to which he was entitled by the terms of the deed of trust.

Bill in equity, claiming interest on the plaintiff's share of his father's estate in the hands of the defendant [James McGuire] under a deed of trust, by which the defendant was directed to invest the estate in productive stocks; the plaintiff [John Y. Nicholson] having, at full age, given a receipt for $1,048.74, as his share of the estate.

Mr. Hewitt, for plaintiff.
Mr. Taylor, for defendant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The bill in this cause states that the plaintiff's father, in November, 1821, died, having first made a deed of trust of his whole estate to the defendant. and that among other trusts the defendant was bound to pay to the plaintiff, upon his coming of age, $1,500, and such portion of the interest of the same as should be unexpended in his support and education; and that it was made the duty of the defendant, at the death of the plaintiff's father, to sell all the property in the deed mentioned, and invest the proceeds in such stock as the defendant should deem best for the interest of the children. The deed provides that $3,000 should be paid to his daughter Mary at the death of her father; $2,500 to his son, Henry W. Nicholson, at twenty-one years of age; $1,500 to the plaintiff, as before-mentioned; and $2,350 to his son Lionel, at twenty-one; to whom also the deed gives the residue of the proceeds of the property.

The bill charges that the plaintiff was entitled to receive interest upon the $1,500 from the death of his father until he became of age. That when he arrived at the age of twenty-one the defendant paid him $1,048.74; falsely and fraudulently representing to the plaintiff that that was all he was entitled to receive. That the plaintiff, under these impressions, created by the defendant, gave him a receipt, which, he supposes, purported to be a receipt in full for the provision made for him by his father; but that he never did receive more than the $1,500. The bill then prays that the defendant may be decreed to pay him interest on the $1,500 from the death of his father till he obtained his majority, which was in the month of ——, 1829; and for general relief.

The defendant, in his answer, admits the trust as set forth in the deed; that Henry became of age on the 17th of August, 1826, and the plaintiff on the 18th of June, 1829. That Lionel will become of age on the 18th of November, 1832. That the defendant has not sold the stocks mentioned in the deed, but sold other personal property to the amount of $3,622.46 on the 15th of December, 1821; and he exhibits his account with the trust fund, and with each of the distributees. That he paid over to the executors

$1,233.79, to be applied by them to the payment of the debts of the plaintiff's father. That he considered the power of sale as discretionary with himself, and that he acted according to his best judgment. That he never has applied any of the trust fund to his own use. That he believed the stocks of the banks in this district to be precarious; and states other reasons for not investing the trust-fund in stock of the United States, or in stock of the Bank of the United States, or in private securities. That the widow of the plaintiff's father instituted a suit in chancery in this court to vacate the deed to the extent of her supposed distributory share, or one third part of the property conveyed, on the ground that the deed was made by her husband in his last illness, in contemplation of his death and for the avowed purpose of excluding her. The account rendered by the defendant shows that without sale of the specific stocks mentioned in the deed, the defendant had always in his hands, funds sufficient to make the payments to the distributees; and sufficient to produce the interest upon the principal sums until they became payable.

It is clear that, by the deed of trust, the plaintiff had a right to receive the dividends and interest upon his distributive share until it should be paid; and that it was the duty of the defendant to invest the fund in such stocks as would have produced such dividends and interest; and having failed to do so, he was bound to pay the interest himself; even if, as he is said to have alleged, the money had been lying idle in the bank. But it was competent for the plaintiff when he came of age to relinquish his claim for interest; and if he has done so in the present case, with a full knowledge of all the circumstances, he must be bound by his act. Upon receiving $1,048.74, on the 24th of August, 1829, he gave the following receipt: "Received, Alexandria, 24th day of August, 1829, the sum of one thousand and forty-eight dollars 74/100, which with the moneys advanced to me during my minority, is in full of fifteen hundred dollars provided for me in the trust-deed from my father to James McGuire. John Y. Nicholson. $1,048.74. Witness: A. Moore." This is not a receipt in full of all demands under the deed, but only of the $1.500 provided for him by the deed. But the deed provided more than the $1,500. It provided for the dividends and interest which should accrue upon $1.500, laid out in productive stocks. It bound the defendant to procure such stocks at all events; and the plaintiff's right to those dividends was as perfect as his right to the principal sum. When, therefore, he gave a receipt for the principal sum, it was no bar to a claim for the dividends which had accrued upon it. The $1,500, constituted a specific sum set apart for a particular purpose. It was not a debt due from the defendant for the withholding

of which interest was to be given by way of damages. The dividends were as expressly given as the principal. No inference can be drawn, from such a receipt as this, that the plaintiff intended to acquit the defendant of the dividends, or interest, if he had a right to claim them under the deed. It is not, therefore, a bar in equity to the present claim. But if it had been a receipt in full of all demands, yet it appears to have been obtained under circumstances which should induce a court of equity to say, that the defendant ought not, in good conscience, to avail himself of it in bar of the present suit. The defendant was a young man just arrived at the age of twenty-one, eager to receive the provision made for him by the deed of trust, and probably ignorant of the law, and of his rights under the deed. It can hardly be supposed that he was aware that if the defendant had not laid out the fund in productive stock, agreeably to the directions of the deed, he was liable to pay interest on it to those among whom the fund was to be distributed at a future day.

There is also evidence that the defendant alleged that the trust-fund was lying dead in the Bank of Alexandria, and not used by him until drawn out for the purposes of the trust. This also tended to mislead the plaintiff. There is evidence also that from the year 1821 to 1828, the defendant was extensively engaged in the buying and selling lumber. That he received in the first year, under the deed of trust upwards of $8,000, and paid on account of the trust, not more than $1,500; yet it does not appear that he had in the bank at any one time more than $4,750.46; and in December, 1823, although he had received by his own account $10,281.80, on account of the trust-fund, and had paid on that account, not more than $5,000, his deposits in bank amounted only to $745.70. The excuse, therefore, which he alleged, for not paying interest, (namely, that the money was lying dead in the bank,) is not supported by the evidence; and a receipt in full, if obtained upon such a representation, ought not in good conscience to avail the defendant to any greater extent than to the amount actually received.

The plaintiff, in his bill, distinctly charges that the receipt was obtained under impressions, created by the defendant's falsely and fraudulently representing to the plaintiff, that the sum of $1,048.74 was all that he was entitled to receive. This allegation is not denied by the defendant's answer, and is corroborated by the testimony of Mr. Moore and Mr. White; the latter of whom proves that the defendant was advised by able counsel, as early as December, 1823, that if he did not invest the fund in productive stock, he would be liable to pay interest; and the former testifies that the defendant informed those who were to receive the fund, that it was lying dead in the bank.

Under such circumstances the court cannot say that the receipt is a bar to the plaintiff's claim for interest. If the receipt is not a bar, we think that the plaintiff has a right to claim it, inasmuch as the defendant had sufficient funds in his hands, and did not invest them as required by the terms of the deed of trust. We think the plaintiff is entitled to interest, at six per cent. per annum, on $1,500, from the expiration of a reasonable time, say six months after the death of his father, until the 24th of August, 1829, when the principal sum was paid; the amount of which can be ascertained without a reference to a master.